UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTIMATE FITNESS CENTER, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND A. WILSON, an individual; ROBERT YENOR, SR., an individual; ROBERT YENOR, JR., an individual; ROBERT W. YENOR CPA A PROFESSIONAL CORPORATION, a California corporation dba YENOR & ASSOCIATIONS; and DOES 1-25,<br><br>Defendants. | Case No.: 16-CV-418 JLS (JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL**<br><br>(ECF No. 19) |

Presently before the Court is Defendants' Motion to Disqualify Counsel. ("MTN," ECF No. 19.) Also before the Court are Plaintiff Ultimate Fitness Center, LLC's response in opposition to ("Opp'n," ECF No. 22) and Defendants' reply in support of ("Reply," ECF No. 23) Defendants' Motion to Disqualify Counsel. The Court vacated the hearing previously set for August 11, 2016 and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 24.) After considering the parties' arguments and the law, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion to Disqualify Counsel.

/ / /

# BACKGROUND

In 2015, Ray Wilson ("Wilson"), Robert Yenor, Sr. ("Yenor Sr."), and Robert Yenor, Jr. ("Yenor Jr."), among others, owned and operated a fitness center called Emerald City Athletic Club-Billings LLC ("Emerald", previously known as Family Gym). (MTN 4,[1] ECF No. 19-1.) Yenor Jr. served as the manager of Emerald. (*Id.*) Ultimate Fitness Center, LLC ("Ultimate") similarly operates a fitness center called Ultimate Fitness Center. (*Id.*) Ultimate is owned and managed by Robert Hueso ("Hueso").

In March 2015, the Yenors and Hueso met to discuss the possibility of merging Emerald and Ultimate, but did not conclude with any agreement or intent to come to an agreement. (*Id.* at 5.) The parties met a few months later, but the Yenors made clear that no deal would be considered without it being reduced to writing. (*Id.*)

During the negotiations, Hueso became aware that Emerald had received a demand letter from its landlord in connection with a lease for which Emerald was a guarantor. (*Id.*; Opp'n 4, ECF No. 22). Hueso suggested that Emerald engage Matthew Faust ("Faust"), an attorney from the law firm Sharif Faust Lawyers, LTD. ("Sharif-Faust") representing Ultimate on other matters, to assist with the landlord issue. (*Id.*) Emerald contacted Faust and they entered into an attorney-client agreement on September 15, 2015. (*Id.*) Both parties agree that the scope of Faust's representation under this agreement was to respond to the landlord's demand letter and resolve the dispute. (MTN 5–6, ECF No. 19-1; Opp'n 4, ECF No. 22.)

On September 25, 2015, Emerald entered into another attorney-client agreement with Faust, wherein Yenor Sr., but not Yenor Jr., signed on behalf of Emerald. (MTN 6, ECF No. 19-1; Opp'n 6, ECF No. 22.) The scope of this agreement was limited to "reorganize the company's structure and negotiate the transfer of leases from various other entities into the resultant company's name." (MTN 6, ECF No. 19-1 (citing Declaration of Robert Yenor, Sr. ("Yenor Sr. Decl.") ¶ 9).) According to Defendants, neither of the

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

attorney-client agreements provided for a scope of work related to the deal between Ultimate and Emerald or the new legal entity, which was to be called National City Gym, LLC. (*Id.*) Nevertheless, Faust prepared drafts of a "NewCo Founders' Agreement," a "Memorandum of Understanding" ("MOU"), "Articles of Organization," an "Operating Agreement," and formation minutes for the contemplated entity. (MTN 6, ECF No. 19-1; Opp'n 6, ECF No. 22.)

On September 25, 2015, Faust emailed Hueso and the Yenors a copy of the proposed MOU. (MTN 6, ECF No. 19-1.) Yenor Jr., as the managing member of Emerald, rejected the MOU because he objected to its terms. (*Id.*) Despite no agreement, by early October 2015 Hueso convinced Yenor Sr. to change the name of the gym from "Family Gym" to "Ultimate Fitness Center" and begin operating the fitness club. (*Id.* at 7.) The parties attempted to resolve their disputes throughout October and November. (*Id.*) Defendants allege that, between September 15, 2015 and December 29, 2015, Faust had numerous phone calls with the Yenors, and met with the Yenors at least three times. (*Id.* at 8.) Plaintiff claims that Emerald became nonresponsive around the end of October, but Sharif-Faust continued to inform Emerald about communications between it and Ultimate. (Opp'n 9, ECF No. 22.) This resulted in two meetings, one in November and one in December, but these meetings produced no joint instructions for Sharif-Faust to follow. (*Id.*; MTN 7, ECF No. 19-1.)

Sharif-Faust sent correspondence formally terminating its representation of Emerald on or about January 9, 2016. (Opp'n 9, ECF No. 22.) On January 22, 2016, Faust sent the Yenors and Emerald a letter on behalf of Ultimate demanding money for alleged damages suffered by Ultimate relating to the termination of Ultimate's "business relationship" with the Yenors. (MTN 8, ECF No. 19-1.) On February 17, 2016, Faust, on behalf of Ultimate, filed a Complaint against Defendants in the present case. (ECF No. 1.)

## LEGAL STANDARD

In deciding disqualification motions, California federal courts apply California state law. *See In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).

A court's authority to disqualify counsel "derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (citations, internal quotation marks, and alteration omitted). "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id*. Accordingly, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Collins v. State*, 121 Cal. App. 4th 1112, 1124 (2004) (citing *id*.).

Because disqualification motions can be misused for tactical purposes, they "'should be subjected to particularly strict judicial scrutiny.'" *Shurance v. Planning Cont. Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

## ANALYSIS

Defendants argue that Faust should be disqualified because his representation of Plaintiff violates three rules of professional conduct: (1) Rule 3-310(C), which prohibits representation adverse to a current client; (2) Rule 3-310(E), which prohibits representation adverse to a former client; and (3) Rule 5-210, which prohibits a lawyer from testifying before a jury in a matter in which he represents one of the parties, unless an exception applies. (*See* MTN 5, 7–8, ECF No. 19-1; Reply 6, ECF No. 23.) The Court considers each argument in turn, beginning with Rule 3-310(E).

**I.   Rule 3-310(E)**

California Rule of Professional Conduct 3-310(E) provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." In the case of successive representation, when there is a substantial relationship between the former and current representation, and when the nature of the prior

representation or the relationship between the attorney and his former client is such that "confidential information material to the current dispute would normally be imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information *is presumed*." *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1208 (Cal. App. 3d Dist. 2011) (internal quotations and citations omitted) (emphasis in original). When the potential conflict "arises from the successive representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client confidentiality." *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994) (en banc) (emphasis omitted).

Defendants argue that Faust violated this rule because Faust represented the Yenors in their individual capacity. (MTN 9, ECF No. 19-1.) Additionally, Defendants argue that a substantial relationship exists between the former matters and the present action. (*Id.* at 11.) Next, Defendants argue that a conflict of interests exists, and any alleged waiver of conflicts of interest is void. (*Id.* at 13–16.)

Plaintiff argues that Faust has not violated this rule for three reasons. First, Plaintiff argues that Faust is not, and has never been, Defendants' attorney. (Reply 11, ECF No. 22.) Second, Plaintiff argues that Defendants waived any right to confidentiality they had by emailing allegedly confidential information to other persons. (*Id.* at 13.) Third, Plaintiff argues that Emerald waived any conflicts of interest in this case because Sharif-Faust obtained Emerald's written, informed consent prior to filing this lawsuit. (*Id.* at 15.)

Because the Court concludes that neither Faust nor his law firm represented the Yenors in their individual capacity, the Court does not consider Defendants' further contentions under Rules 3-310 (e.g., whether a substantial relationship existed between the prior representation and current case), which require an attorney-client relationship.[2]

---

[2] The Court notes that this conclusion does not necessarily foreclose the possibility that Faust's representation of Plaintiff in this suit against the Yenors and Wilson is impermissible as to Faust's previous client, Emerald. However, the Court does not reach this discussion because Defendants' arguments and evidence to disqualify Faust and his firm are based on the Yenors, not Emerald, as previous clients.

Likewise, the Court does not address Plaintiff's argument that Defendants waived their right to confidentiality by emailing allegedly confidential information to others, or that Emerald waived any conflicts prior to this case.

"An attorney-client relationship is formed when an attorney renders advice directly to a client who has consulted him seeking legal counsel." *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993) (citing *Beery v. State Bar*, 43 Cal. 3d 802, 811–12 (1987)). "A formal contract is not necessary to show that an attorney-client relationship has been formed." *Id.* (citing *Bernstein v. State Bar*, 50 Cal. 3d 221, 229–30 (1990)). "The court may look to the intent and conduct of the parties to determine whether the relationship was actually formed." *Id.* (citing *Hecht v. Super. Ct.*, 192 Cal. App. 3d 560, 565 (1987)).

As an initial matter, the Court concludes that, if anything, the two agreements at issue in this case created an attorney-client relationship between Sharif-Faust and Emerald, not between Sharif-Faust and the Yenors.[3] Indeed, both of the agreements signed between Sharif-Faust and the Yenors explicitly list Emerald, not the Yenors, as the client represented by Sharif-Faust.[4] (*See* Yenor Sr. Decl. 7 ("This ATTORNEY-CLIENT FEE CONTRACT . . . is entered into by and between **EMERALD CITY ATHLETIC CLUB BILLINGS, LLC** (a Client) and **Sharif-Faust Lawyers, Ltd.** (Attorneys) to represent

---

[3] The Court does not assess whether the agreements between Sharif-Faust and Emerald are valid based on Defendants' argument that Yenor Sr. was not required to sign the first one—but did—and that only Yenor Sr., as a "Member," signed the second agreement on behalf of Emerald. At this juncture the Court simply finds that these agreements—and their alleged discrepancies—did not create an attorney-client relationship between Faust and the Yenors as individuals.

[4] And, as Plaintiff points out, an "attorney for a corporation represents it, its stockholders and its officers in their *representative* capacity. He in nowise represents the officers personally." (Opp'n 12, ECF No. 22 (quoting *Meehan v. Hopps*, 144 Cal. App. 2d 284, 290 (1956) (emphasis added)); *see also Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1842 (1995), *as modified on denial of reh'g* (Aug. 11, 1995) ("[A]s attorneys for [a] corporation, counsel's first duty is to [the corporation]."); *id.* (citing *Skarbrevik v. Cohen, England & Whitfield*, 231 Cal. App. 3d 692, 704 (1991) ("These cases make clear that corporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.")).

client in negotiations with a landlord asserting a personal guarantee against client.") (emphasis in original)); *id.* at 15 ("This ATTORNEY-CLIENT FEE CONTRACT ('Contract') is entered into by and between **EMERALD CITY ATHLETIC CLUB BILLINGS, LLC** ('Client') and **Sharif-Faust Lawyers, Ltd.** ('Attorney') to reorganize the company's structure and negotiate the transfer of leases from various other entities into the resultant company's name.") (emphasis in original)).) Additionally, each agreement between Emerald and Sharif-Faust clarified that the agreement bound Emerald, not the Yenors, even though the Yenors signed their names on behalf of Emerald:

> By signing below, Ultimate Fitness Center, LLC, and Emerald City Athletic Billings consent to the representation contemplated in this agreement. The mere agreement to this representation shall not be construed as an agreement to be bound by Emerald City Athletic Billing, LLC's obligations under this Agreement.
>
> For Emerald City Athletic Billings, LLC:
> [Signature lines for the Yenors]

(Yenor Sr. Decl. 13, 21, ECF No. 19-2.) Moreover, Sharif-Faust never invoiced either Yenor Sr. or Jr. individually for any of its work, but instead sent invoices to Emerald. (Declaration of Matthew Faust ("Faust Decl.") ¶ 10, ECF No. 22-2.)

Furthermore, while both Yenors contend that they considered Faust to represent them in their individual capacity, (Yenor Sr. Decl. ¶ 10; Declaration of Yenor, Jr. ("Yenor Jr. Decl.") ¶ 8, ECF No. 19-3), they do not explain *why* they thought so. Indeed, Defendants fail to put forth any evidence demonstrating, for instance, that Faust ever held himself out to be their attorney, or that they ever communicated to Faust or his firm their belief that they were represented by Faust. In contrast, Faust contends that he "did not hold [himself] out as an attorney for the Yenors, and instead [Sharif-Faust] identified its client as Emerald City on the representation agreement, conflict waiver, and billings." (Faust Decl. ¶ 16, ECF No. 22-2.) Additionally, Faust claims that he never received "communications with either of the Yenors indicating" that they believed he was their personal attorney. (*Id.*)

Indeed, Faust characterized his relationship with Ultimate and Emerald as akin to a "scrivener," wherein he would receive joint instructions from both parties to work toward their mutual benefit with regard to the proposed merger. (*Id.* at ¶ 8.) Without any evidence to the contrary provided by Defendants, the Court concludes that the two agreements that purportedly established an attorney-client relationship between Shariff-Faust and Emerald do not extend to the Yenors as individuals.[5]

Aside from the two agreements between Sharif-Faust and Emerald, Defendants argue that Faust separately established an attorney-client relationship with the Yenors on three grounds. First, Defendants argue that Faust represented the Yenors because Faust's work related to the formation of National City Gym and/or the proposed deal between Ultimate and Emerald was not within the scope of the two agreements between Sharif-Faust and Emerald. (MTN 10, ECF No. 19-1.) Second, Defendants argue that Faust represented Yenor Sr. because the documents he prepared regarding the formation of National City Gym "had signature lines for Yenor, Sr. to sign in his individual capacity . . . [and] Faust and Yenor, Sr. had numerous attorney-client communications relating to" the new gym. (*Id.* at 10.) Finally, Defendants argue that Faust represented Yenor Sr. because "Faust prepared multiple versions of the MOU between the parties on which Yenor, Sr., *not Yenor, Jr.*, was to sign as the 'Managing Member' even though Faust's own retainer agreement lists Yenor, Jr. as the managing member of Emerald." (*Id.* at 11.)

The Court is not convinced that Faust established an attorney-client relationship with the Yenors in their individual capacity under any of Defendants' arguments. As to their first argument, Defendants do not explain how the September 25, 2015 agreement, under

---

[5] Defendants also argue that it is "odd" that the agreements had a signature line for Yenor Sr. even though only Yenor Jr., as managing member, was apparently required to sign on Emerald's behalf. (MTN 9, ECF No. 19-1.) However, Defendants do not explain how this alleged oddity creates an attorney-client relationship between Faust and the Yenors. On the other hand, in the preceding sentence Defendants acknowledge that the agreement "identifies the client as 'Emerald City Athletic Club Billings, LLC.'" (*Id.*)

which Sharif-Faust was to "reorganize the company's structure and negotiate the transfer of leases from various other entities into the resultant company's name," does not encompass drafting documents related to the formation of the new entity.[6] Indeed, Defendants do not offer any explanation for the existence of the September 25, 2015 agreement whatsoever. In contrast, Faust explains that after completing the landlord dispute on behalf of Emerald, he "was approached by Ultimate and Emerald City to expand the scope of representation to assist in the drafting of documents related to a potential merger between the two entities." (Faust Decl. ¶ 7, ECF No. 22-2.) In furtherance of the parties' instructions to assist in the merger, Faust drafted the September 25, 2015 agreement, which was signed by Yenor Sr. (*Id.*) Defendants do not address this contention in their Reply. Thus, Defendants' first argument fails.

The Court finds Defendants' second and third arguments—that Faust represented Yenor Sr. because the new gym's founding documents listed him, not Emerald or Yenor Jr., as the signatory—similarly unavailing. Essentially, Defendants argue that Faust represented the Yenors because "if it was true that Faust did not represent the Yenors, then why did Faust name the Yenors as a party to the merger[?]" (Reply 3, ECF No. 23.) Notably, in their Reply, Defendants state that "Faust's declaration is oddly silent as to" the issue of Yenor Sr.'s signature on the formation documents, where a signature on behalf of Emerald should apparently appear. (*Id.* at 2–3.)

Defendants' argument assumes that because Faust included Yenor Sr.—and not Emerald—on the new company's documents, he was not working on behalf of Emerald, his client.[7] However, Hueso explains that he understood that "Mr. Wilson desired to have

---

[6] To be sure, Defendants generally aver that "[t]hese issues are entirely outside of any agreement between Faust and Emerald." (Reply 3, ECF No. 23.) However, Defendants do not explain why this is the case, which is especially problematic given that the entire reason for the existence of the relationship between Emerald and Ultimate, and the introduction of Sharif-Faust to Defendants, was the possibility of merging their companies or otherwise creating a new entity, which Defendants themselves acknowledge. (*See, e.g.*, Yenor Sr. Decl. ¶¶ 1–7.)

[7] However, in their Motion, Defendants seem to concede that Faust was working on behalf of *Emerald* on this matter. For one, Defendants allege that Faust provided "legal counsel and document preparation

Robert Yenor, Sr. listed as an owner of that entity instead of Emerald City." (Declaration of Robert Hueso ("Hueso Decl.") ¶ 14, ECF No. 22-1.) Thus, according to Hueso, "*joint* instructions were provided by Ultimate and Emerald City to the lawyer to draft the documents that way." (*Id.* (emphasis added).) Indeed, the Court finds that it is Defendants' Reply which is oddly silent on Hueso's declaration that having Yenor Sr. listed as the signatory was a joint decision between Ultimate and Emerald. Thus, Defendants' remaining arguments fail. Accordingly, based on the evidence and arguments presented by the parties, the Court concludes that the Yenors were not represented by Faust or his law firm in their individual capacities.[8]

## II.   Rule 5-210

California Rule of Professional Conduct 5-210 states, in relevant part, that "[a] member shall not act as an advocate before a jury which will hear testimony from the member unless: (A) [t]he testimony relates to an uncontested matter; . . . or (C) [t]he member has the informed, written consent of the client." Although Rule 5-210 is limited to jury trials, California Rule of Professional Conduct 1-100 "states that the prohibitions [included in the rules] are 'not exclusive,' and it expressly permits consideration of ethical rules of other jurisdictions and bar associations," including the American Bar Association's Model Rules, whose Advocate-Witness Rule (Rule 3.7) is not limited to jury trials. *Eldridge*, 201 Cal. App. 4th at 1210. Accordingly, Rule 5-210 may apply beyond jury trials. *See id.* at 1210–11.

In their Reply, Defendants argue that "Faust was a witness to the proposed merger and will likely be called as a witness at trial relating to his knowledge of the impasse

---

relating to Hueso's proposed deal between Ultimate and *Emerald* and forming a new legal entity of which Ultimate and Yenor Sr., individually, would be equal owners." (MTN 6, ECF No. 19-1 (emphasis added).) Additionally, Yenor Sr. admits that it "was [his] understanding that Faust was representing both Ultimate and *Emerald* with respect to the drafting of the MOU." (Yenor Sr. Decl. ¶ 12 (emphasis added).)

[8] Based on this conclusion, the Court need not address Defendants' contentions that Faust violates the various provisions of California Rule of Professional Conduct 3-310, including Defendants' allegations regarding Rules 3-310(C) and 3-310(E), which presuppose and require an attorney-client relationship.

reached by the parties." (Reply 6, ECF No. 23.) In particular, Defendants claim that, in Plaintiff's Opposition, Faust acknowledged that he tried to "facilitate the merger" and obtain joint instructions in furtherance of the merger, but that the parties "were at an impasse." (*Id.* at 3 (citing Opp'n 9, ECF No. 22).) Defendants further argue that Faust never obtained written consent from either Emerald or the Yenors to act as a witness in this case. (*Id.* at 3, 6.)

The Court concludes that, at this juncture, Rule 5-210 does not disqualify Faust. To begin, it is not clear to the Court that, based on the evidence presented, Faust is likely to be called as a witness in this case.[9] Yet even if Faust is likely to be called as a witness, Rule 5-210(C) would allow Faust to testify if he secures informed, written consent from his client. *See Real Estate Training Int'l, LLC v. Nick Vertucci Cos.*, 124 F. Supp. 3d 1005, 1006 (C.D. Cal. 2015) ("The key distinction between ABA Model Rule 3.7 and California Rule 5–210 is that the latter provides an exception to the attorney-advocate rule when an attorney obtains informed consent."). Because Defendants make this argument for the first time in their Reply, the Court does not have the benefit of Plaintiff's views on the matter. Nevertheless, given that Plaintiff vigorously contests Defendants' Motion to Disqualify Counsel, the Court assumes that Plaintiff would give—if it has not already given—Faust its written, informed consent to serve as a witness in some capacity in this case.[10] *See Real Estate Training Int'l*, 124 F. Supp. 3d at 1007 ("In other words, under the plain language of Rule 5–210(C), informed consent ends the inquiry.") And as discussed above, the Court

---

[9] In particular, Faust alleges that, because he jointly represented Emerald and Ultimate, all communications he received from one party were shared with the other party. (Faust Decl. ¶ 17 ("My firm's representation was with Emerald and Ultimate, thus, the joint nature of the representation meant that communications would be shared between the two companies.").) Without more detail from Defendants, it appears to this Court that much—if not all—of the communications between the parties and Faust are in Emerald's—and thus the Yenors'—possession, reducing the need to have Faust serve as a witness in this case.

[10] Though, of course, Plaintiff is free to contest this point after receiving this Order, at which point Defendants may again raise this argument.

concludes that the Yenors were not represented by Faust, so their written informed consent is unnecessary.[11]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Disqualify Counsel is **DENIED WITHOUT PREJUDICE**. The Court is unable, based on the information provided thus far, to conclude that either Faust or his firm Sharif-Faust must be disqualified from representing Plaintiff in this case. However, if new information becomes available which suggests that a more significant relationship existed between Faust, his firm, and the Yenors, Defendants may bring this motion again. And, as previously discussed, *supra* note 2, the Court in this Order does not determine whether Faust's representation of Plaintiff in this case is inappropriate as to Emerald.

**IT IS SO ORDERED.**

Dated: November 21, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[11] Furthermore, Emerald's consent is likewise unnecessary, since Emerald is not a party to the present suit and is no longer Faust's nor Sharif-Faust's client.